### VENIDES v. UNITED GREEK SHIP-OWNERS CORPORATION.
### No. 273, Docket 20982.

Circuit Court of Appeals, Second Circuit.

June 21, 1948.

Arkin, Lebovici & Kottler, of New York City (Joseph Kottler, of New York City, of counsel), for plaintiff-appellant.

Reid, Cunningham & Freehill, of New York City (Frederick H. Cunningham, of New York City, of counsel), for defendant-appellee.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

The plaintiff is a Greek merchant seaman who served aboard the Greek-flag vessel, Hellas, as an employee of the defendant, United Greek Shipowners Corporation, a Delaware Corporation. His rate of pay was £28 per month, at the exchange rate of $4.02 per pound or $112.56 per month.

Plaintiff sued, pursuant to 46 U.S.C.A. §§ 596 and 597,[1] for "double pay" for the withholding of portions of his wages, in the amount of $25 at the end of a first voyage on August 22, 1945, and in the amount of $225 at the end of a second voyage on March 22, 1946. In each instance, the master[2] refused to pay the deducted amount on plaintiff's demand made at the end of the voyage. At the end of the second voyage,

---

[1] Those sections read as follows:

§ 596: "Time for payment; double wages recoverable. The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts."

§ 597 (in part): "Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the balance of his wages earned and remaining unpaid at the time when such demand is made at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void. * * * And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall be then due him, as provided in the preceeding section * * provided further, That this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement * * *"

[2] The masters on the two voyages were different.

the master sent plaintiff to the office of defendant corporation where a corporate officer also refused plaintiff's demand for the $225.

In answer to plaintiff's pre-trial request for admissions, defendant admitted that the defendant's corporate officers, before the end of the first voyage, had read Glandzis v. Callinicos, 2 Cir., 140 F.2d 111, and Lakos v. Saliaris, 4 Cir., 116 F.2d 440; and they "as laymen were familiar with the purport of those decisions" and "with the purport of" 46 U.S.C.A. §§ 596 and 597.

On plaintiff's motion for summary judgment, the district court entered judgment for the amounts withheld but ordered a trial on the issue of "double pay." At the trial on that issue, defendant did not dispute the foregoing facts but offered in evidence a "Collective Agreement" made on September 2, 1943 between the defendant and a seaman's union of which plaintiff was a member. This agreement provided that a certain portion of each seaman's wages, consisting of "compulsory savings," were to be withheld by defendant, deposited in a London bank for the benefit of the seaman, and not to be withdrawn by him until "after the signing of an armistice between Great Britain and Germany or the liberations of Greece." Neither of the masters who refused payment of the deducted amounts nor any officers of the defendant took the stand to explain why these amounts had been withheld.

At the close of the evidence, the plaintiff and defendant each moved for a directed verdict. The judge directed a verdict for defendant.

The court denied plaintiff's motion, timely made under Federal Rules of Civil Procedure, Rule 50(b), 28 U.S.C.A. following section 723c, to set aside the verdict and to have judgment entered on his motion for a directed verdict, or, in the alternative, for a new trial. From the judgment for defendant, plaintiff appeals.

FRANK, Circuit Judge.

█ Glandzis v. Callinicos, 2 Cir., 140 F. 2d 111 (C.C.A. 2), and Lakos v. Saliaris, 4 Cir., 116 F.2d 440, make it plain that the withholding was improper, despite the Collective Agreement. As defendant's officials knew of these decisions, defendant, if it was to avoid liability under 46 U.S.C.A. §§ 596 and 597, had a heavy burden to show that the refusal to pay had "sufficient cause." Nevertheless, defendant did not offer any testimony of either master or of any other of its representatives to the effect that the refusal was based on a belief that there was some doubt because of the agreement.

Defendant, which in the court below (either in connection with the motion for summary judgment or at the trial), made no reference to 46 U.S.C.A. § 599,[3] now asserts in this court that the provisions of that section render valid the withholding under the Agreement. We cannot agree, since there was no compliance with § 599. Nor, on the facts, is defendant in a position to say that any of its representatives had that section in mind when payment was refused.

██ On this record, we think the trial judge should have entered a directed ver-

---

[3] That section reads as follows:

§ 599(b): "It shall be lawful for any seaman to stipulate in his shipping agreement for an allotment of any portion of the wages he may earn to his grandparents, parents, wife, sister, or children, or for deposits made in an account opened by him and maintained in his name either at a savings bank or a United States postal savings depository subject to the governing regulations thereof.

"(c) No allotment shall be valid unless in writing and signed by and approved by the shipping commissioner. It shall be the duty of the said commissioner to examine such allotments and the parties to them and enforce compliance with the law. All stipulations for the allotment of any part of the wages of a seaman during his absence which are made at the commencement of the voyage shall be inserted in the agreement and shall state the amounts and times of the payments to be made and the persons to whom the payments are to be made, or by directing the payments to be made to a savings bank or a United States postal savings depository in an account maintained in his name.

"(d) No allotment except as provided in this section shall be legal * * *

"(e) This section shall apply as well to foreign vessels while in waters of the United States, as to vessels of the United States * * * *"

dict in favor of plaintiff. Here the plaintiff moved in time pursuant to Rule 50(b). In that respect this case differs from Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, and Cone v. West Virginia Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849. We therefore direct that judgment be entered for two days' pay for each day between the date of each withholding and the date of the order for the summary judgment.

Reversed.